NOTICE

Decision filed 03/27/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240247-U

NO. 5-24-0247

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| WILLIAM J. ROMEO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 21-L-17 |
| | ) | |
| BANK OF HERRIN, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting defendant's motion for summary judgment on count III is affirmed where no material question of fact exists, the statute of limitations defeated the claim, and the relation back doctrine is inapplicable; however, the trial court's order granting defendant's motion for summary judgment on counts I and II is vacated where the continuing tort doctrine and the discovery rule tolled the statute of limitations as to those claims.

¶ 2    Plaintiff, William J. Romeo, appeals the trial court's November 23, 2023, order granting summary judgment to defendant, Bank of Herrin, and its January 18, 2024, order denying plaintiff's motion for reconsideration. For the following reasons, we affirm in part and vacate in part.

1

¶ 3                                    I. BACKGROUND

¶ 4    William F. Romeo passed away on September 30, 2013. Two days later, the deceased's son and plaintiff herein, William J. Romeo, filed a petition of will and for letters testamentary, alleging his father's estate contained approximately $2,010,200 in assets. The petition requested the court name him the executor of his father's estate. In support, plaintiff attached a will executed on September 1, 2004, which named plaintiff as the executor, devised all of decedent's property to plaintiff, and provided nothing to decedent's wife, Jo Ann, or his other son, Dennis. A second will executed May 2, 2013, was also provided with plaintiff's filing. The 2013 will revealed that Jo Ann predeceased William, devised $1 each to plaintiff and Dennis, named decedent's fiancée, Carolyn Joan Burton, as the executor, and distributed all but $2 of the estate to Ms. Burton. Plaintiff moved the court to enter the 2004 will into probate and advised that he contested the 2013 will. An emergency motion for preliminary injunction was also filed that alleged decedent was under a guardianship at the time the second will was executed, questioned William's mental competency, alleged undue influence by Ms. Burton, and further alleged that Ms. Burton caused William's death. The motion requested the court issue an order allowing Dr. Heidingsfelder to perform an autopsy on the deceased, and, in an effort to protect the deceased's property, remove Ms. Burton and her family from the decedent's premises and preclude them from selling decedent's personal property and/or accessing decedent's financial accounts.

¶ 5    On October 4, 2013, Ms. Burton filed a petition for probate of will listing the approximate value of the estate as $1,009,000. The petition requested the court name her as the executor pursuant to the 2013 will.

¶ 6    On October 4, 2013, an order was entered allowing for an autopsy on decedent's body. The order further addressed how decedent's visitation and burial would be handled. On November 27,

2

2013, the parties entered an agreed order that provided for supervised administration of decedent's estate and named the Bank of Herrin as the executor "for purposes of collecting the Estate's assets, discerning the Estate's debts and payment of said debts." Ms. Burton was named executor for the sole purpose of defending the will contest. The order included the following provisions: (1) no monies were to be transferred from any accounts, including bank accounts, certificates of deposits (CDs), and any and all investments, which were held either individually or jointly in the deceased's name and reserved the issue of the jointly titled bank account of the deceased and Ms. Burton; (2) no monies were to be paid to any death beneficiary designated by the decedent for any of his accounts, including but not limited to bank accounts, CDs, life insurance policies, annuities, and investments; and (3) the only expenses that were to be paid from decedent's accounts were expenses associated with the "administration of the Estate (attorney's fees and out-of-pocket expenses incurred to administer this Estate)" and decedent's funeral expenses. An amended agreed order, entered on December 17, 2013, clarified that the decedent's life insurance policies were excluded from the "freeze." On February 7, 2014, letters of office for decedent's estate were issued to the Bank of Herrin.

¶ 7    On May 13, 2014, plaintiff filed a complaint against Ms. Burton contesting the 2013 will. The three-count complaint alleged a lack of testamentary capacity, undue influence, and that Ms. Burton caused the death of the deceased. On June 9, 2014, plaintiff filed a request for inventory directed to the Bank of Herrin, pursuant to section 14-1(a) of the Probate Act of 1975 (755 ILCS 5/14-1(a) (West 2014)), noting that more than 60 days elapsed since the letters testamentary were issued to the Bank of Herrin. On June 20, 2014, Ms. Burton filed an answer to plaintiff's complaint denying the majority of allegations therein and discovery was initiated in the will contest. On July 8, 2014, counsel for the Bank of Herrin entered its appearance.

¶ 8    On July 23, 2014, plaintiff filed a petition for recovery citation against the Bank of Herrin, related to 10 CDs each in the amount of $5,000 that were originally payable on death to plaintiff; however, the certificates were reissued to William on April 23, 2013. The pleading relied on an agreed order in decedent's guardianship case that precluded "any asset transfer" by any party beyond a weekly expense paid to decedent and plaintiff paying decedent's nursing home expenses. The petition alleged that the Bank of Herrin redeemed the reissued certificates and received the principal amount for the certificates plus interest. The petition asked the court to order the Bank of Herrin to rescind the reissued certificates due to violation of the court's guardianship order and pay the amounts on the certificates to plaintiff. Copies of the CDs, the hearing transcript, and the written order were attached to the pleading. On August 25, 2014, the Bank of Herrin filed a motion to dismiss the petition stating that the term "transfer" in the guardianship order was not defined and therefore the reissuance of the CDs was not a violation of the order.

¶ 9    On September 3, 2014, plaintiff moved for inspection of the real estate. The motion alleged that plaintiff met with the trust officer at the Bank of Herrin on March 12, 2014. At that meeting, plaintiff requested that he be allowed to view the property. Plaintiff later called the Bank of Herrin on March 25, 2014, April 11, 2014, April 15, 2014, and June 3, 2014, again requesting that he be allowed to inspect his father's property. On June 3, 2014, plaintiff was told that "no one was to be on the property without approval of the Court." The motion requested inspection to "determine the location and possibly removing items belonging to [plaintiff] including farm equipment" and to determine if property belonging to the estate had been removed by Ms. Burton, so the missing property could be reported to the executor.

¶ 10   On September 5, 2014, the Bank of Herrin filed its inventory listing assets on Exhibit A in addition to $600 in monthly income. Exhibit A included 2023 share of stock valued at $82,352.08,

10 parcels of real estate with a combined value of $584,928, a savings account with $40,000, and a cash account with $50,978.24. Additional assets included a boat trailer with a value of $1,460, a 1998 Buick LeSabre valued at $2,000, a 1988 Chevrolet van valued at $1,000, a 1962 Chevrolet pickup valued at $1,500, a 2002 Mercury Mountaineer valued at $2,725, and a 1936 Pontiac valued at $1,500. Other assets listed included the contents of the deceased's house, white barn, and gray barn valued at $1 each. The assets totaled $728,446.32.

¶ 11    On September 16, 2014, the court was advised that the parties reached an agreement regarding plaintiff's request to inspect the property. The parties argued the Bank of Herrin's motion to dismiss plaintiff's petition for recovery citation and the court took the matter under advisement. On September 19, 2014, an agreed order was issued by the trial court, allowing plaintiff to inspect the home with two people to assist him during the inspection. On September 30, 2014, the court issued an order granting the bank's motion to dismiss plaintiff's petition for recovery citation, but stated:

> "However, leave is granted to William J Romeo to amend the petition by making it more definite and certain and limiting the relief requested to the relief allowed under 755 ILCS 16-2. The court by this ruling is not holding that the theory of relief as alleged cannot stand as a matter of law, if properly pled."

The order granted leave to file an amended pleading in 28 days.

¶ 12    On October 21, 2014, plaintiff filed a petition for recovery citation against Ms. Burton. This petition involved the Twinkle Tree Farm checking account that had a balance of $6,475.94 on September 3, 2013, and decedent's personal checking account that had a balance of $21,523.18 on September 3, 2013. The petition alleged that subsequent to decedent's death, Ms. Burton removed funds from the business account leaving a balance of $100 as of December 16, 2013, and

5

overdrew the personal checking account by $5,831.84 by December 16, 2013. The petition alleged such action was contrary to the agreed order in the guardianship case and the Bank of Herrin took no action to bring those funds into the estate. The petition requested the court determine the proper title and right of the property previously held in the bank accounts and order Ms. Burton to return the funds. Attached to the petition were copies of bank statements that included three checks written to "Cash" signed by Ms. Burton on the business account totaling $6,375.94 and nine checks written to "Cash" signed by Ms. Burton on the personal account totaling $20,297.63. On the same day, plaintiff filed an amended petition for recovery citation against the Bank of Herrin related to the 10 reissued CDs previously addressed in the July 23, 2014, petition.

¶ 13 On October 24, 2014, plaintiff filed a supplemental response to Ms. Burton's interrogatories that included a list of lay witnesses who would testify as to the removal of property from the decedent's home and outbuildings. On November 10, 2014, the Bank of Herrin moved to dismiss plaintiff's petition for recovery citation related to the CDs, again arguing that "transfer" was not defined in the guardianship order and the reissuance was not a "transfer" because the deceased could change the beneficiary at any time during his lifetime. On November 12, 2014, Ms. Burton also moved to dismiss plaintiff's recovery citation against her, arguing that plaintiff did not have standing to bring the action. On December 22, 2014, plaintiff filed responses to both motions. The motions were argued on January 27, 2015, and the court took the matters under advisement. On February 20, 2015, the trial court issued an order on the pending petitions for recovery citations. The court found "numerous problems with the requests for citations," finding that plaintiff lacked standing as to Ms. Burton's claim and the petitions were based on the deceased allegedly violating a court order in the deceased's now-closed guardianship case. The court also

found Ms. Burton was not a party to the now-closed guardianship case and was not bound by that order. The court then denied both petitions.

¶ 14    On February 20, 2015, plaintiff filed a petition for recovery citation against Ms. Burton, her daughter Danielle Burton, and her daughter's partner, Lisa Fann. The petition listed tangible property belonging to the decedent's estate that included: a coin collection with a value of $2,878,624, along with items from the home totaling $136,755, for a total of $3,015,379.61. The petition alleged that the property was in the decedent's home prior to March 28, 2013, and was removed from the property prior to October 31, 2014. The petition requested the court order the respondents to determine who had title and right of the property and deliver the property to the decedent's estate. Attached to the petition was a 19-page typed list that included decedent's coin collection along with property from decedent's house, a framing store located on the decedent's property, and property outside the residence. The lengthy and detailed list was classified by room and indicated whether the property was missing or damaged. The items included coins, furniture, bedding, tablecloths, linens, keys, shelving, plants, books, dishes, clocks, statues, electronics, jewelry, knives, cookbooks, photographs, ammunition, a stamp collection, and genealogical items. Items from the store, some of which were listed as missing, included picture frame molding, pictures, display cases, telephones, tables, chairs, tools for framing pictures, furniture, holiday decorations, antique furniture, electronics, jewelry, silver, and culinary equipment. The list also included outdoor items, listing those seen and those missing or damaged, including antiques, garden boxes, outside furniture, a boat, and a horse drawn hay rake. On May 5, 2015, the court ordered citations to issue against Ms. Burton, Danielle Burton, and Lisa Fann to answer the allegations in the petition as to the items set forth in Exhibit A.

¶ 15    On May 5, 2015, plaintiff filed a request for accounting directed to the Bank of Herrin pursuant to section 24-1(a) (755 ILCS 5/24-1(a) (West 2014)). The request noted that the accounting was due by statute before April 8, 2014, and no accounting had been filed.

¶ 16    On July 10, 2015, the Bank of Herrin filed a petition to sell two parcels of real estate. The petition stated the total appraised value of the two properties was $512,000 and the Bank of Herrin received an offer to purchase the same real estate for the full appraised value. The Bank of Herrin stated that the timing of the sale was beneficial because the buyer was willing to pay full value, and the real estate needed to be sold in order to pay the estate debts. The appraisal was attached and valued one parcel containing 40 acres of wooded land at $112,000 and the second parcel containing 63 tillable acres with an additional 53.8 acres (116.8 acres total) for $400,000.

¶ 17    On July 10, 2015, plaintiff filed a petition for recovery citation against the Bank of Herrin pursuant to section 16-2 of the Probate Act (755 ILCS 5/16-2 (West 2014)). The petition alleged that plaintiff had personal property located primarily in the barns on decedent's property with three additional items found in the residence. Plaintiff contended that the barns and residence were locked and the Bank of Herrin was in control of the items. The petition asked the court to determine who had title and right of ownership and direct the Bank of Herrin to deliver plaintiff his property. The attached exhibit listed approximately 57 pieces of equipment totaling $76,165 and approximately 76 tools totaling $26,016 from the white barn. The equipment included numerous tractors, plows, cultivators, discs, fuel tanks, mowers, and one 1962 Chevrolet truck. The tools included an air compressor, a bench vice, a welder, a sand blaster, a torque multiplier, a propane furnace, and numerous wrench sets, socket sets (including a drive impact swivel set), ratchets, crescent wrenches, pliers, jacks, log chains, hammers, tire irons, screwdrivers, battery chargers, pipe wrenches, grinders, electric drills, hoes, rakes, shovels, saws, planers, drill bit sets, trowels,

8

arm saws, ladders, hydraulic repair parts, tractor repair parts, fishing poles, and life jackets. The list also included approximately 65 additional tools in the gray barn with a value of $39,429 that included numerous shovels, planters, lights, lights, fans, hatches, motors, lawnmowers, lights, sprayers, fans, levels, trimmers, post hole diggers, bolt cutters, tractor equipment, and some antique items including a sickle, scythe, clawfoot bathtub, and a glider. Additional items claimed by plaintiff included a ceiling for the grey barn and a ceiling for the new barn valued at $39,000, tree equipment valued at $19,900, miscellaneous hardware valued at $16,100, and antique tools valued at $31,075. None of the items was listed as "missing" on the exhibit. A certificate of service for the petition was filed on July 13, 2015, and plaintiff's verification of the petition was filed on July 16, 2015.

¶ 18    On July 14, 2015, following a hearing on attorney fees, the court's docket entry noted that the petition for sale of real estate would be set for hearing upon agreement of the parties. The court also issued an order requiring the Bank of Herrin to issue an accounting prior to July 31, 2015.

¶ 19    On August 10, 2015, Ms. Burton filed an objection to the petition for sale of real estate, stating the property was undervalued. On August 11, 2015, the Bank of Herrin filed its accounting, revealing an asset balance of $679,000.23. Except for the vehicles, the assets in the house and two barns remained valued at $1 each. The store and its contents were still not listed. The accounting listed $750,080.37 in receipts and $71,080.14 in disbursements. On August 13, 2015, plaintiff also filed an objection to the petition to sell real estate, noting a lack of information regarding the appraisal and missing acreage for the property. He further argued that he had personal property on the subject property, and the real estate had sentimental value because it was in his family for 53 years.

¶ 20    On September 22, 2015, plaintiff filed an emergency petition for appointment as special administrator to file a wrongful death claim against Ms. Burton, her daughter, and the daughter's partner, alleging that he asked the Bank of Herrin to file the lawsuit in September 2015, but the Bank of Herrin declined, and the statute of limitations was approaching. Following a hearing on September 25, 2015, plaintiff was named special executor to pursue the wrongful death and survival case.

¶ 21    On October 6, 2015, the proposed purchaser of the real property, Cynthia Bunch, a partner of Sundman Land Holdings, LLC, intervened in the case and filed a response in support of the Bank of Herrin's petition to sell real estate. The response stated that neither party provided any evidence of a higher value for the property and that plaintiff had no claim to the real property because Ms. Burton was the sole legatee.

¶ 22    On November 2, 2015, plaintiff's attorney moved to withdraw. The motion was granted on November 24, 2015. Plaintiff obtained new counsel who filed an appearance and requested a continuance of the December 15, 2015, hearing that was set for "all pending." The motion was granted and the "all pending" hearing was rescheduled for February 9, 2016. Following the hearing, the court docket revealed that the only issue addressed was the Bank of Herrin's motion to amend its petition to sell the real property. The court granted the motion. Thereafter, two amended petitions to sell the real property were filed by the Bank of Herrin, plaintiff continued to object, Ms. Bunch again responded in support of the sale, and plaintiff obtained new counsel. On April 13, 2016, a hearing was held on the Bank of Herrin's petition to sell the real property. Following the hearing, the trial court took the matter under advisement.

¶ 23    On April 29, 2016, the trial court issued an order summarizing the executor's testimony from the April 13, 2016, hearing. The executor's testimony indicated the bank paid $100,000 in

attorney fees, sold personal property of the estate, and had a balance of $30,000 that she believed was insufficient to pay the current and future debts of the estate. The order further noted that the executor did not receive prior court approval to obtain the appraisal, title work, or the sale of decedent's stock. The court denied the petition to sell but granted leave to refile because it could not "determine that the sale is necessary at this time for the proper administration of the Estate, without current values and debts and projected income and expenses." The order also addressed actions by the Bank of Herrin, noting its "concerns that the Executor is under the misapprehension that it is an independent executor" and stating that the court's order clearly indicated "supervised administration" and that the Bank of Herrin was only "granted the power to act independently in the payment of attorney fees, administration costs and funeral expenses."

¶ 24    On May 27, 2016, the Bank of Herrin filed an updated accounting for the period from May 13, 2015, to March 31, 2016, revealing an asset balance of $621,941.60. Plaintiff filed an objection to the accounting four days later, noting discrepancies between the summary and the general ledger, the lack of any valuation for personal property, that stock was sold without leave of court, the CDs were not included in the inventory, a new passbook savings account needed to be explained, there was no mention of any crop lease revenue, and no credit card or tax information was provided. A second objection was filed by plaintiff that also requested clarification of the real estate values and argued that additional stock was sold without leave of court, the 2002 Mercury Mountaineer and 1998 Buick LeSabre were sold without leave of court, and car batteries were purchased. The objection further noted that the Bank of Herrin would not clarify the status of plaintiff's personal property related to the 1962 Chevrolet pickup truck and the 1936 Pontiac and the contents of the barns, stating the Bank of Herrin disputed his claims and

11

"refused to allow him to take possession of those assets. However, the Executor shows no value for those items and offers no explanation as to what, if any, steps the Executor has taken to secure and preserve those items of tangible personal property pending a final disposition of the issues of ownership."

Plaintiff was concerned that some of the items were exposed to the elements and deteriorated in condition and value. Plaintiff also requested an explanation of what steps were taken by the Executor regarding the Christmas tree crop after the Bank of Herrin denied plaintiff's request to access the equipment in the barn to maintain the property and care for the Christmas tree crop.

¶ 25　A hearing on the accounting was scheduled for July 19, 2016. On July 11, 2016, the Bank of Herrin requested a continuance of the hearing due to a mediation scheduled for August 24, 2016, that might alleviate the necessity of any hearing on the accounting and also resolve the will dispute between plaintiff and Burton. The motion was granted on July 19, 2016.

¶ 26　On August 10, 2016, the Bank of Herrin filed a response to plaintiff's objection. It argued that the stock was sold on May 19, 2014, to pay expenses and leave of court was not required. The CDs were also cashed in March of 2014. It agreed that the tangible value of the personal property assets was not provided because the value was unknown. It stated that property and the remaining vehicles were stored in the house and barn. It further claimed that plaintiff's first objection was untimely. As to plaintiff's second objection, the Bank of Herrin again argued that leave of court was not necessary to sell the personal property and that plaintiff and Burton were advised of the proposed sale of the stock and vehicles and made no objection. The car batteries were purchased to make the vehicles operable for sale. It stated that plaintiff needed to provide proof that the 1962 Chevrolet pickup and 1936 Pontiac were his vehicles, and that all his claimed personal property

12

was locked in the barns and kept out of the elements. It disputed plaintiff's claim that he requested the Bank of Herrin maintain or allow him access to equipment to maintain the Christmas tree crop.

¶ 27    A second mediation was scheduled for late November 2016. While hearings were scheduled, ultimately, none were held while the parties continued settlement negotiations through much of 2017. On July 24, 2017, Ms. Burton's counsel in the wrongful death claim moved to remove plaintiff as the executor of that claim arguing that plaintiff did not have standing.

¶ 28    On August 24, 2017, the Bank of Herrin filed a "current accounting" for the period from September 28, 2016, through March 27, 2017. The asset balance was listed as $612,875.12. Plaintiff's counsel withdrew and new counsel appeared on August 31, 2017. The motion to remove plaintiff as executor proceeded to hearing on September 5, 2017. Following the hearing, counsel was granted leave to respond to the petition in 7 days and the parties were given 21 days to respond to the issue of whether the Bank of Herrin was a properly named executor of decedent's estate. On September 21, 2017, the trial court issued an order removing plaintiff as the executor of the wrongful death claim, finding that the prior appointment was void.

¶ 29    On September 26, 2017, plaintiff filed an objection to the current accounting that also objected to the Bank of Herrin's appointment as executor. On September 29, 2017, the Bank of Herrin filed a memorandum in support of its appointment. On October 13, 2017, plaintiff moved to continue the jury trial in the will contest because a replevin action against Ms. Burton and the two other women was scheduled to begin the same day as the final pretrial. On October 23, 2017, a supplementary account was filed revealing an asset balance of $616,355.21.

¶ 30    The will contest between plaintiff and Ms. Burton was settled on September 18, 2018. Pursuant to the terms of settlement, Ms. Burton moved to withdaw the 2013 will. The Bank of Herrin objected to the motion. Plaintiff moved to dismiss the will contest complaint on October 4,

13

2018, and petitioned for admission of the 2004 will and issuance of letters testamentary. Plaintiff also filed a motion to strike the Bank of Herrin's objection due to a lack of standing and further contended the Bank of Herrin failed to comply with the rules of supervised administration. On October 31, 2018, the trial court issued an order on the pending motions, objections, and petition. The order granted the motion to withdraw the 2013 will, noting that the Bank of Herrin was the executor for all aspects, except the will contest, of the estate. It stated, "this Court has been critical of that procedure as it has led to unnecessary complications on multiple fronts." The court also dismissed plaintiff's will contest complaint and removed the Bank of Herrin as the representative of the estate. The court ordered the Bank of Herrin to file a final report on or before November 16, 2018, admitted the 2004 will to probate, and appointed plaintiff as executor of his father's estate.

¶ 31    The Bank of Herrin filed its final report on November 14, 2018, listing an asset balance of $610,972.89. On November 26, 2018, plaintiff moved for a joint inspection of William's estate to inspect the condition of the estate and provide an accurate inventory prior to the hearing on the final accounting. Plaintiff further noted that none of the prior accounting had been approved. On January 17, 2019, plaintiff filed objections to the current accounting and final report alleging numerous actions were taken outside the supervised administration rules. It then filed a lengthy objection providing specific objections related to each accounting previously filed by the Bank of Herrin. On March 12, 2019, the Bank of Herrin filed its response to plaintiff's objections.

¶ 32    On March 28, 2019, the trial court issued an "Order Resolving Objections to Final Report of Bank." The court found that the bank's initial report and inventory was untimely but addressed the reports anyway. Relevant here, the court sustained plaintiff's objection related to the Bank of Herrin's failure to remove Ms. Burton from the estate until May 16, 2014, allowing Ms. Burton and others to live on the property until that time and drive estate vehicles until June 9, 2014, when

14

the vehicles were returned to the property. The court noted that no forcible entry case was filed to remove Ms. Burton, and no replevin action was filed regarding the vehicles. However, the court found "the Bank's argument that personal property was removed before its appointment is unrebutted" and overruled the objection as to the personal property. The court also found that the Bank of Herrin's sale of the MetLife stock violated the court's order of supervised administration. A similar finding was made as to the Bank of Herrin's sale of the Frontier/Verizon stock and incurrence of the Compushare expense without court approval. As to the Christmas tree farm, the court took "issue with the unsupported allegation of the Bank that it had no obligation to maintain an unincorporated business of the deceased." The order concluded by stating:

> "For the reasons stated, the Court finds that the Executor failed to fully comply with terms of the Court's Order governing administration of the Estate. The initial report was not timely filed. Assets were sold without authority. Debts owed to the Estate were not timely collected or fully pursued. The court declines to approve each annual report and the final report herein."

¶ 33 The court issued a separate order regarding the requested attorney fees but found the entries were "best described as vague." Ultimately, the court found it could not approve the attorney fees paid and disapproved the amounts paid by the Bank of Herrin to both its own lawyer as well as Ms. Burton's lawyer.

¶ 34 Thereafter, supplemental attorney fee statements were filed, with additional objections raised. Ultimately, the trial court issued an order on July 10, 2019, awarding $77,500 to the executor's attorney (which was about one-half of what was requested for the entire period and less than what had already been paid), $6,000 for the executor's fees, and denied any payment to Ms. Burton's attorney.

15

¶ 35    On April 22, 2020, plaintiff as executor filed a petition for recovery citation against Ken Hughes and his law firm, as attorneys for the former executor of the estate, related to the overpayment it received based on the court's attorney fee order. On April 27, 2020, the law firm agreed to the overpayment and said payment would be issued to the estate. The payment was issued and the estate received payment.

¶ 36    On May 18, 2020, plaintiff filed a petition for recovery citation against the Bank of Herrin related to the overpayment to Ms. Burton's lawyer. In response, the Bank of Herrin said it would pay a portion less a setoff allegedly due to the Bank of Herrin and issued payment for $1,324.89 of the $7,324.89 requested.

¶ 37    On August 24, 2020, plaintiff filed a petition for recovery of his assets that the Bank of Herrin refused to release to him. The petition cited an email from March 12, 2014, in which plaintiff reiterated his ownership of the tools and equipment in the barn (as evidenced by their inclusion on his tax filings), the Christmas tree farm, and his denied request to use the equipment to care for the crop. The petition further noted that the Bank of Herrin's inventory attributed no value for the contents of the barns. The petition cited videos taken by the Bank of Herrin on March 18, 2014, and April 10, 2014, that revealed assets not listed on the inventory and included comments made by Bank of Herrin employees on those videos that indicated a belief that all of the property would ultimately be provided to Ms. Burton. The petition also cited video taken on October 31, 2014, from plaintiff's inspection, revealing additional assets that were never included in the Bank of Herrin's inventory. Count I alleged a failure to prepare a proper inventory and mismanagement of the estate property. The petition alleged that plaintiff was not allowed to inspect the property until November 2018 and, during that interim, the Bank of Herrin had a duty to (1) secure the estate's property, (2) separate the estate property from that belonging to others,

16

(3) timely release property that did not belong to the estate, and (4) control the property in a manner that would preclude others from stealing, damaging, or converting the property. The claim requested judgment against the Bank of Herrin for mismanagement of plaintiff's property valued at $38,715.17 based on a six-page list of items in the barns that were either missing or damaged. Count II alleged a failure to secure the contents of the home that were part of the estate as well as plaintiff's personal firearms that were permanently missing from the property that he was not able to determine until November 2018. The 12 firearms were valued at $12,534. Count III alleged waste and damage to plaintiff's personal property, noting property that was seen in the October 2014 inspection that was no longer found on November 15, 2018, when he was able to view the property again. The missing or damaged property included a riding mower, a bush hog mower, a tree flocking machine, a 1960 antique Troy-Bilt mower, a truckload of white spruce lumber, and antique cash registers. The pleading noted that the mower was left to rust and gear boxes filled with water and froze. The petition requested $38,715.17.

¶ 38     On September 25, 2020, the Bank of Herrin, through new counsel, filed a motion to dismiss based on the statute of limitations and that the entity had no obligation to manage non-estate property. The Bank of Herrin stated the applicable statute of limitations was five years and applied to plaintiff's claims because plaintiff learned that items of his property were missing in 2014.

¶ 39     On October 2, 2020, plaintiff filed as the executor, a petition for recovery against the Bank of Herrin related to assets of the estate. This lengthy petition is not relevant to the issues on appeal, and therefore need not be addressed, except to note the confusion caused by the filing of the second petition. On October 8, 2020, the trial court issued a docket entry that stated:

"Court considers pending motion to dismiss the petition for recovery of assets filed

8/24/20 (since the filing of the motion, a second petition for recovery has been

17

filed). No response filed. No oral argument necessary. Motion raises statute of limitation arguments and petitioner's standing to assert the claims. The court denies the statute of limitation argument as the court needs to resolve various facts as to the time of discovery. However, the court grants the motion as it relates to standing of the petitioner to use the probate statute to collect his own property. 755 ILCS 5/24-18 and 5/14-1 apply to mismanagement of the estate. Motion to dismiss is granted."

¶ 40    On December 22, 2020, plaintiff moved for leave to file an amended pleading. On January 4, 2021, the trial court granted the motion. The docket entry ordered the petition to recover assets filed October 2, 2020,[1] the entry of appearance and motion to dismiss filed September 25, 2020, and the amended petition, when filed, to be transferred to the L division.

¶ 41    On January 15, 2021, plaintiff's amended complaint for conversion, trespass to chattels, and punitive damages was filed in the probate matter. Pursuant to the December 22, 2020, order, the complaint was transferred to the L division. The complaint alleged that plaintiff had certain items of plaintiff's personal property stored on decedent's property and the Bank of Herrin was appointed as executor of William's estate. The complaint further alleged that the Bank of Herrin assumed control of the real estate and controlled plaintiff's access to his items of personal property stored on the estate property. It alleged that plaintiff initially demanded return of his items on March 12, 2014, and continued his demands for their return until November 15, 2018, when plaintiff replaced the Bank of Herrin as executor. The complaint further alleged that a hearing was held on November 13, 2017, at which time the parties stipulated that plaintiff had a superior right

---

[1]This should have referenced the August 24, 2020, petition, thus adding to the confusion, because the petition for recovery against the Bank of Herrin as it related to the estate assets and plaintiff's amended complaint related to his personal assets were both transferred to the L case and were then mislabeled and misdated in the record's table of contents.

18

to possession to a substantial number of items that were the subject of the current complaint. Count I alleged conversion as to $65,899 in items that were missing when plaintiff was able to visit the property on November 30, 2018. The missing items were set forth as four-page Exhibit D attached to the complaint comprised of items in the white and gray barns. Count II alleged trespass to chattels and was based on the damage to property plaintiff was able to repossess following the transfer of executors. The property damaged was listed in a four-paged Exhibit F and the amount of damage to that property was listed in Exhibit G, for a total loss of $15,150 in repair and replacement and rental of similar property for the relative time period in the amount of $35,531.

¶ 42 On February 5, 2021, the Bank of Herrin filed a motion to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 2020)). The motion claimed that plaintiff's claims were barred by the five-year statute of limitations based on plaintiff's allegation that he made multiple demands to the executor to return the property in March 2014 but waited until August 2020 to file a lawsuit.

¶ 43 In response, plaintiff agreed that the five-year statute of limitations applied, and that plaintiff was aware the Bank of Herrin took control of his property in 2014. However, he argued that the statute of limitations should not begin until plaintiff determined the items were missing or damaged, which was not until November 30, 2018, when he was able to receive some of the property held by the previous executor. Plaintiff argued that this was a continuing tort doctrine case, and November 30, 2018, was the last date of the tortious act.

¶ 44 On April 27, 2021, plaintiff filed a "second motion" requesting transfer of the July 2015 petition for recovery citation filed in the probate action to the 2021 L case. The motion alleged the petition was served on July 13, 2015, remained pending, and was the same property for which relief was sought in the L proceeding. Despite no objection being filed, the request was denied in the probate court's May 14, 2021, docket entry. No basis for the denial was provided.

19

¶ 45    On May 4, 2021, plaintiff filed a response to the court's April 21, 2021, question that stated all the property for which relief was sought in case No. 2021-L-13 was at issue in case No. 2015-L-13.[2] On May 4, 2021, plaintiff also filed a supplemental response to the motion to dismiss that noted plaintiff's July 10, 2015, petition for recovery citation involved the same property and remained pending in the trial court, and therefore, the statute of limitations was tolled.

¶ 46    On May 14, 2021, the trial court denied the motion to dismiss, stating that based on the materials presented,

> "the current petition does not relate back to the July 2015 petition which was within the 5 years statute of limitations. Additionally, the court is convinced that the complaint for damages to his property could not accrue until he knew of the damage. The court has insufficient evidence at this time as to when that occurred."

¶ 47    Thereafter, discovery related to the case began. On December 2, 2022, the Bank of Herrin filed a pleading in the instant matter that also confirmed that plaintiff filed a petition for recovery citation for his own property on July 10, 2015, and admitted the claim "was never litigated" and questioned service of the document.[3]

¶ 48    On December 15, 2022, the Bank of Herrin filed an answer to plaintiff's complaint, denying the majority of the allegations in the complaint. It also filed affirmative defenses that included *inter alia*, the statute of limitations, a lack of standing, defendant had no duty to safeguard the non-estate property, the claims were barred by judicial estoppel, collateral estoppel, and/or *res judicata* based on the 2015 replevin lawsuit, and the bank did not mismanage the estate at issue but acted as an ordinarily prudent and cautious person as trustee of the property of another.

---

[2]The record for case No. 2015-L-13 was not included in this appeal.
[3]The certificate of service indicates the document was served via U.S. Mail to Ms. Burton's lawyer, the executor's lawyer, and counsel for plaintiff's brother.

¶ 49    On July 27, 2022, plaintiff's deposition was taken. Therein, he admitted that all of the items claimed to be missing in the conversion count (count I) were missing when he surveyed the property in October 2014 and stated that his neighbors called him within a week of his father's passing and stated that items were being removed from the property. He further admitted that he knew the guns were missing from the residence by November 2013 when Ms. Burton's lawyer told him there were no firearms in the residence at that time, although they were on the day his father died because Candy Coulter told him they were. Plaintiff further admitted that those items were all included in the prior replevin action against Ms. Burton and the two other women. Plaintiff did not know why the July 2015 petition was not advanced. His attorney Paula Newcomb stated that it was filed by the attorney before her and stated, "We didn't proceed on the recovery citations. We were sort of in the middle of a will contest and didn't get to that." Despite the aforementioned testimony, plaintiff later testified that the list of property in the 2015 petition (Exhibit A) was the basis for the current Exhibits D, F, and G, and he did not know if the items were "missing at that time or not." He stated that Exhibit A was "what was there. *** Exhibit D is what is missing. Exhibit D is not part of Exhibit A." The testimony also revealed that plaintiff had video from inside the barns from January 2013 and all the equipment and tools were in the barns at that time. When questioned about damage to the property during the October 2014 inspection, plaintiff stated that he noticed a flat tire at that time and agreed no property was ever rented. Plaintiff did unequivocally state that the firearms were missing at the initial October 2014 inspection and were subject to a December 2014 police report.

¶ 50    On March 10, 2023, the Bank of Herrin filed a motion for summary judgment. The bank argued that based on plaintiff's testimony, he was aware that the property was missing in 2014 and waited over five years to file the lawsuit in 2020 and therefore the statute of limitations barred the

lawsuit. In the alternative, the Bank of Herrin requested judgment in its favor on plaintiff's claim for the rental price of property that was in the bank's possession because there was no evidence that the bank's allegedly improper actions caused plaintiff to pay money to rent property. As to count II, the pleading contended that plaintiff knew some of the equipment was being damaged, as evidenced by a flat tire in 2014, and therefore that claim was also barred by the statute of limitations. The motion was supported by plaintiff's July 27, 2022, deposition, an affidavit of the executor confirming inspection of the property in October 2014, and the first page of a complaint for replevin filed against Ms. Burton and the two other women in which plaintiff allegedly requested return of the firearms and his tools and equipment.

¶ 51 On April 18, 2023, the Bank of Herrin filed a motion to dismiss based on discovery violations. On April 20, 2023, the court vacated the settings and deadlines, reopened discovery for three months, and stayed argument on all pending motions until discovery was closed.

¶ 52 On May 16, 2023, plaintiff moved for leave to file a third count related to the missing firearms and requested damages in the amount of $20,000. No objection was filed, and the court granted the motion on June 6, 2023. On June 29, 2023, the Bank of Herrin filed its answer to count III denying or claiming insufficient information for most of the allegations and listing the same affirmative defenses as set forth in the original answer.

¶ 53 On August 15, 2023, the Bank of Herrin filed an amended motion for summary judgment. The motion was identical to that previously filed but additionally argued that similar to count I, plaintiff was incapable of proving the guns went missing while the bank was the executor, which was fatal to his claim. In addition to the transcript of plaintiff's deposition, a copy of the police report for the missing guns dated December 30, 2014, was also attached, along with the complaint for replevin against Ms. Burton and the others.

¶ 54    On October 26, 2023, plaintiff filed a response that asserted the statute of limitations was tolled because the 2019 replevin case established that plaintiff proved his ownership but not the conversion. It further argued that the Bank of Herrin was not a party to the replevin proceeding, the July 10, 2015, petition for recovery citation remained pending, and plaintiff filed numerous pleadings trying to get his property back, but the Bank of Herrin refused to release the property even after plaintiff was determined the owner in the replevin action. The response further alleged that the claim did not accrue until plaintiff was appointed as the executor and given the keys on November 30, 2018, because there was no way for him to know what was missing until he was allowed access. On November 6, 2023, the Bank of Herrin filed a reply again stating that nothing alleged by plaintiff was sufficient to withstand judgment based on the statute of limitations.

¶ 55    On November 14, 2023, the trial court issued an order granting summary judgment in favor of the Bank of Herrin. As to the July 10, 2015, petition, the court found that plaintiff "filed within the probate case a petition for recovery seeking property from Burton in 13-P-226. That petition was denied by the Court in a written order entered February 20, 2015." Thereafter, the court found there was no doubt as of October 31, 2014, that when plaintiff and his attorney met with the Bank of Herrin representatives to inspect the property, plaintiff was aware at least part of his property was missing and that the bank would not return it. It found plaintiff failed to prove application of the discovery rule and the statute of limitations was expired when the case was filed.

¶ 56    On December 11, 2023, plaintiff moved for reconsideration, stating the bank was precluded from relying on the replevin case because it was not a party and the July 10, 2015, replevin action remained pending and was not to be confused with a different recovery citation filed on July 23, 2014. It also argued a question of fact as to when plaintiff determined all of the items were missing. On December 21, 2023, the Bank of Herrin filed its response to the motion to reconsider. After

23

hearing arguments on January 18, 2024, the trial court denied the motion to reconsider. Plaintiff timely appealed.

¶ 57                                    II. ANALYSIS

¶ 58     Our review of a case decided by summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)). In such situation this court "performs the same analysis that the trial court would perform." *People v. McDonald*, 2016 IL 118882, ¶ 32. A trial court is only permitted to grant summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). Additionally, just as the trial court, we must view the documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Here, it is not clear that the trial court viewed the pleadings in a favorable light to plaintiff to determine whether no material issues of fact exist.

¶ 59     Count I alleged conversion against the Bank of Herrin. While it is undisputed that some of the missing items, most notably the firearms, were missing in December 2013, the objects in the barns are not quite as clear. Contrary to defendant's motion for summary judgment argument, plaintiff's testimony as to what exact items were missing in 2014 was equivocal. Plaintiff initially stated that all of the items claimed as missing in the conversion count (count I) were missing when he surveyed the property in 2014 and were included in the prior replevin action against Ms. Burton and the other women. However, he later stated that some of the items were not missing at the time of the initial inspection in October 2014.

¶ 60     Defendant's affirmative defense related to the statute of limitations is based on plaintiff's inspection of the property in October 2014. However, it is unclear, based on this record, what items

24

were missing and what remained in the barns at the time plaintiff inspected the property at that time. Items that were not missing in 2014, but were missing at the time of plaintiff's second inspection in 2018, would be ripe for consideration in count I. While it is clear that some of the barn items were missing at the time of the October 2014 inspection, there is nothing in this record that would indicate plaintiff would know that any additional items were removed after the 2014 inspection based on the Bank of Herrin's refusal to allow him access to the property for nearly four years.

¶ 61    Relevant here is the continuing tort doctrine originally asserted by plaintiff in his response to the Bank of Herrin's initial motion to dismiss. "Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (citing *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 266 (2001)). "However, under the 'continuing tort' or 'continuing violation' rule, 'where the tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.' " *Id.* (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002)). Here, it is undisputed that the Bank of Herrin refused to provide plaintiff with the items he claimed as his own during its tenure as the executor. It is equally undisputed that plaintiff was unable to regain the property held by the Bank of Herrin until the Bank of Herrin's tenure concluded and plaintiff was named the executor.

¶ 62    "A continuing tort *** involves viewing the defendant's conduct as a continuous whole for prescriptive purposes." *Id.* at 279. It is well established that a defendant engaging in various acts of tortious interference with the utilization of a plaintiff's property over a period of three years was sufficient to find a continuing tort. See *id.* (citing *City of Rock Falls v. Chicago Title & Trust*

25

*Co.*, 13 Ill. App. 3d 359, 364 (1973)). " 'Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period.' " *Id.* at 282 (quoting *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 745-46 (2018)). This case does not involve one discrete event as the bank continuously refused to provide plaintiff with his personal property or even allow access to the property. Accordingly, as to any items that were not missing during the 2014 inspection but were missing at the time of plaintiff's 2018 inspection, we hold that count I was not barred by the statute of limitations pursuant to the continuing tort doctrine and further note there is a material question of fact as to what items were missing at the time of the October 2014 inspection compared with any additional items that may have been missing when the Bank of Herrin's tenure ended in 2018.

¶ 63     Count II alleged trespass to chattels claiming injury due to the Bank of Herrin's refusal to release his property. This claim is based on the damage caused to plaintiff's personal property that was eventually returned to plaintiff following the Bank of Herrin's dismissal as the executor. Here, we disagree with the trial court's finding that the plaintiff failed to establish application of the discovery rule.

¶ 64     The "discovery rule" was "adopted *** to ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52 (citing *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20). "The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both than an injury has occurred and that it was wrongfully caused." *Id.* Once a party knows, or reasonably should know, that party is obligated "to inquire further to determine whether an

26

actionable wrong has been committed." *Id.* "The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them." *Id.*

¶ 65    Here, the following facts are undisputed: (1) plaintiff repeatedly requested the Bank of Herrin to return his personal property, (2) the Bank of Herrin refused plaintiff's requests, and (3) the Bank of Herrin also refused to allow plaintiff access to the property where his personal property was held from October 2014 until the Bank of Herrin's tenure as the executor was terminated in 2018. While those facts are undisputed, more than one conclusion can be drawn when the only evidence the Bank of Herrin could rely on was one statement from plaintiff's deposition stating that he saw a flat tire on one of the pieces of equipment during the October 2014 inspection. We fail to see how that statement would cause plaintiff to know, or that he should have known, that the Bank of Herrin would fail to maintain the integrity of the property in its possession for nearly four years when the Bank of Herrin accountings never listed the property held in the barns. Nor would such statement have much relevance when the Bank of Herrin's response to one of plaintiff's objections to an accounting contended that all "personal property has been locked up in the barns, and kept out of the elements," despite leaving the bush hog mower outside.

¶ 66    The Bank of Herrin claims it had no duty to maintain plaintiff's personal property because it was not property of the estate; however, the record is clear in revealing that Bank of Herrin refused to provide plaintiff with his requested personal property and also denied him access to the personal property. Those actions denied plaintiff of both having possession of the property and being able to maintain the property himself.

¶ 67    While an executor does not take title to real property, the executor "generally acquires the legal title to, and the right to possession of, the personal assets of a decedent's estate." *Wilmere v.*

27

*Stibolt*, 152 Ill. App. 3d 642, 645 (1987); *Boghosian v. Mid-City National Bank of Chicago*, 25 Ill. App. 2d 455, 459 (1960). The executor "stands in the shoes of the decedent and acquires the same interest in the decedent's property that the decedent had, but no more." *In re Estate of Cappetta*, 315 Ill. App. 3d 414, 425 (2000) (citing *In re Estate of Ozier*, 225 Ill. App. 3d 33, 37 (1992)). The executor has a duty to file a verified inventory of the real and personal estate. See 755 ILCS 5/14-1(a)-(b) (West 2014). The purpose of the inventory is to show what property is included in the estate. See *In re Herrin's Estate*, 314 Ill. App. 1, 5 (1942). The inventory "brings the matter of any disputed property before the court for adjudication." *In re Estate of Garawany*, 80 Ill. App. 3d 401, 402 (1980). The inventory may include items to which title might not in fact be assets of the decedent. *Ilg v. Continental Illinois National Bank & Trust Co.*, 94 Ill. App. 2d 143, 148 (1968).

¶ 68     Here, the inventory filed by the Bank of Herrin on September 5, 2014, was limited to stock (later sold without leave of court), 10 parcels of real estate, bank accounts, a boat trailer, and five vehicles. The contents of the house, the white barn, and the gray barn were unlisted, and each was assessed at $1. The store, and its contents, was not even listed in the inventory. No supplemental inventory was ever filed by the Bank of Herrin.

¶ 69     The trial court noted in its March 28, 2019, order that the purpose of the order appointing an independent executor was "to preserve the assets of the decedent in their current form until the will contest could be resolved." In that same order, the court found "that the Executor failed to fully comply with terms of the Court's Order governing administration of the Estate." Notably, the trial court also provided in its October 31, 2018, order criticism of the executor's "procedure as it has led to unnecessary complications on multiple fronts." We could not agree more with those statements and believe the Bank of Herrin's failure to timely and properly list the estate inventory

28

hampered plaintiff's attempts to regain his property and resulted in unnecessary confusion as to both the ownership and status of the assets under its tenure as executor.

¶ 70    Here, because no proper inventory was ever filed and no decision was issued on the July 10, 2015, petition filed by plaintiff against the Bank of Herrin, it is unclear whether the Bank of Herrin believed that plaintiff's personal property belonged to the estate. If it believed the property belonged to the estate, the Bank of Herrin was required "to preserve the assets," which would include taking steps to maintain the estate assets. See *In re Estate of Pirie*, 141 Ill. App. 3d 750, 758 (1986) (an executor's fiduciary duty to the estate requires the executor to act "with the highest degree of fidelity and utmost good faith in handling estate assets"). More concerning is the lack of evidence that the bank took steps to maintain any personal property assets of the estate beyond changing the locks months after it took over as the executor. Regardless, the Bank of Herrin's refusal to return the property until a formal decision was issued as to ownership left plaintiff's personal property as potential assets of the estate that required safekeeping and diligence in maintenance pursuant to the executor's duties. See *id.* As plaintiff was denied access to the personal property, he would have no opportunity to determine any damage caused by the executor's failure to maintain the property during its nearly four-year tenure as executor. Therefore, we find that the discovery rule precludes the issuance of summary judgment in favor of the Bank of Herrin on count II and further note there is a material question of fact as to what items were damaged while in the care of the Bank of Herrin.

¶ 71    Count III of plaintiff's action involved his firearms. However, the firearms listed in count III were already missing by October 2014 based on plaintiff's own testimony that was further supported by police report filed in December 2014. As no question of fact exists regarding whether

29

the firearms were missing or not as of October 2014, the statute of limitations doctrine would apply and neither the continuing tort, nor the discovery rule, would toll the claim.

¶ 72    Recognizing the dilemma, plaintiff claims that the relation back doctrine found in section 2-616(b) of the Code of Civil Procedure (735 ILCS 5/2-616(b) (West 2014)) applied between the 2021 action claiming conversion and trespass to chattel and the pending July 2015 petition for recovery citation filed in the 2013-P-115 action. We first note that the trial court disputed the pending nature of the claim and found it issued a ruling on that petition on February 20, 2015. However, both parties disagree with that finding and claim the petition remains pending. Notably, we dispute the likelihood of any trial court issuing a ruling on a petition prior to its filing. The record is also clear that no disposition was issued by the trial court on the date claimed.

¶ 73    Regardless, we disagree with plaintiff's contention that the July 10, 2015, petition was a sufficient basis for application of the relation back doctrine because the petition was moot once plaintiff took over as executor in 2018. A trial court's jurisdiction, as well as an appellate court jurisdiction, is dependent upon the existence of a real controversy. *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 448 (1995). "An issue is moot if no actual controversy exists or events happen that make it impossible for the court to grant effectual relief." *Baker v. Forest Preserve District of Cook County*, 2015 IL App (1st) 141157, ¶ 35. A case is also moot when plaintiffs have secured what they basically sought. *Id.* (citing *People ex rel. Newdelman v. Weaver*, 50 Ill. 2d 237, 241 (1972)). Here, all three have occurred.

¶ 74    At the time the petition was filed in 2015, the Bank of Herrin was the executor and maintained possession of plaintiff's alleged personal property. As such, the existing controversy, *i.e.*, the Bank of Herrin's continued control of plaintiff's property, was extinguished when plaintiff

assumed the executor duties and control of his alleged personal property following the Bank of Herrin's termination as the executor. Further, the Bank of Herrin's removal as executor made it impossible for the trial court to order the Bank of Herrin to return plaintiff's items. Equally relevant is the fact that once plaintiff became the executor, he was placed in control of his alleged personal possessions.

¶ 75    Under these facts, plaintiff's July 2015 petition became moot once the Bank of Herrin was discharged as the executor and plaintiff assumed the role of executor. We are aware of no instance in which a court allowed a pleading that had been moot for two years and was never called for hearing in the three years prior to its mootness, to serve as the basis of a section 2-616(b) relation back pleading and decline to find such use proper here. Accordingly, we disagree with both parties' contention that the pleading remained "pending" and find no basis for the relation back doctrine under these facts.

¶ 76                              III. CONCLUSION

¶ 77    For the reasons stated herein, we affirm the trial court's order granting defendant's motion for summary judgment on count III on the basis of the statute of limitations and vacate the court's order granting summary judgment to defendant on counts I and II, because the continuing tort doctrine applies to count I, the discovery rule applies to count II, and questions of material fact exist for both counts.

¶ 78    Affirmed in part and vacated in part.

31